## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDULRAHMAN ABDOU ABOU AL GHAITH SULEIMAN,<br>    ISN #223, Detainee<br>    Guantanamo Bay Naval Station<br>    Guantanamo Bay, Cuba,<br><br>        Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>    c/o Attorney General of the<br>        United States<br>    U.S. Department of Justice<br>    950 Pennsylvania Ave., NW<br>    Washington, DC 20530-0001;<br><br>    c/o United States Attorney for the<br>        District of Columbia<br>    555 4th Street, NW<br>    Washington, DC 20530;<br><br>BARACK OBAMA,<br>    President of the United States<br>    The White House<br>    1600 Pennsylvania Ave., NW<br>    Washington, DC 20500;<br><br>ASHTON B. CARTER,<br>    U.S. Department of Defense<br>    1400 Defense Pentagon<br>    Washington, DC 20301-1400; and<br><br>JUAN R. MONTEAGUDO ,<br>    Brigadier General<br>    U.S. Department of Defense<br>    1400 Defense Pentagon<br>    Washington, DC 20101-1400,<br><br>        Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. 15 cv<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **PETITION FOR WRIT OF**<br>)   **HABEAS CORPUS**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Petitioner AbdulRahman Abdou Abou Al Ghaith Suleiman ("Suleiman") petitions this Court for the issuance of a writ of Habeas Corpus under 28 U.S.C. § 2241 *et seq.* In support of this petition, Suleiman states:

1.      Suleiman is a Yemeni citizen taken into custody by U.S. military forces in Pakistan and subsequently transferred to the U.S. Naval Station at Guantánamo Bay, Cuba ("Guantánamo"). He has been imprisoned at Guantánamo without charge since approximately February 2002, a period of more than 13 years as of the filing of this petition.

2.      Respondents are the United States of America; President Barack Obama, in his capacity as Commander-in-Chief; Ashton B. Carter, in his capacity as Secretary of Defense; and Air Force Reserve Brigadier General Juan Monteagudo, in his capacity as Commander of the Joint Task Force at Guantánamo. Respondents are responsible for Suleiman's imprisonment.

3.      Suleiman seeks release from imprisonment pursuant to Article I, § 9 of the United States Constitution and 28 U.S.C. § 2241 et seq.

4.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, because this case arises under federal law.

5.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (e) because, among other things, the initial decision to imprison Suleiman at Guantánamo and the decision to continue his imprisonment there were made and approved by Respondents and their predecessors in this judicial district.

**Background Facts**

6.    Suleiman graduated from high school in 2000. He was unable to find employment in his hometown of Taiz, Yemen. He attempted to enter Saudi Arabia to find work, but was turned back at the border. In early 2001, a Taliban recruiter in a Taiz mosque suggested that Suleiman travel to Afghanistan, where he could own a home and find a wife. Suleiman traveled to Pakistan and then Afghanistan, and eventually was taken to what the respondents describe as a Taliban "guesthouse" in Kabul, where Suleiman remained for seven months. He spent one week at a training facility or "staging area." After Northern Alliance leader Ahmad Shah Massoud was assassinated on September 9, 2001, his followers began attacking Arabs in the Kabul area. Shortly after the September 11, 2001 terrorist attacks in the United States, the United States government conducted aerial bombing raids near Kabul. With other refugees, Suleiman fled the fighting to Pakistan, where Pakistani authorities took him into custody and turned him over to United States forces. He was imprisoned at Kandahar and then transported to the

prison at Guantánamo, where he arrived in approximately February 2002 and remains imprisoned today.

7.     Suleiman has never been charged with a crime.

8.     Respondents maintain that the United States government has authority to continue to imprison Suleiman based on the Authorization for Use of Military Force, Pub. L. 107-40, 115 Stat. 224 (2001) ("AUMF"), as "informed by principles of the laws of war," including the Geneva Conventions. (Respondents' Memorandum Regarding the Government's Detention Authority Relative to Detainees Held at Guantánamo Bay, No. 1:08-mc-00442, Dkt. 1690 at 2 (Mar. 13, 2009).)  The AUMF provides:

> "That the President is authorized to use all necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored such organizations or persons, in order to prevent any future acts of international terrorism against the United States by such nations, organizations or persons."

**Prior Proceedings**

9.     In December 2005, Suleiman petitioned this Court for a writ of habeas corpus on grounds that he was not an enemy combatant, he was not a member of the Taliban or Al Qaeda, and he never engaged in combat against the United States or its allies in Afghanistan.

10.     In May 2010, Judge Reggie B. Walton commenced a merits hearing on Suleiman's habeas petition. The government presented no witnesses, relying instead on documentary evidence. Suleiman testified in the hearing via video conference.

11.     Judge Walton denied the petition for habeas corpus because he found that Suleiman "was recruited by a Taliban operative," "stayed at guesthouses where other Taliban fighters resided, and . . . traveled to an area near the battle lines where other Taliban fighters were located." *Sulayman v. Obama*, 729 F. Supp. 2d 26, 46 (D.D.C. 2010). These findings "convinced" the judge "that the most reasonable inference to draw from the evidence [was] that the petitioner's motive for traveling to Afghanistan was due, at least in part, to his desire to be a 'part of' the Taliban." Id. Accordingly, the Judge held Suleiman was "lawfully detained under the AUMF." Id. at 53. Although the Judge denied the habeas petition because of his finding that Suleiman was, more likely than not, a "part of" the Taliban, he acknowledged there was no evidence that Suleiman engaged in any actual hostilities on behalf of the Taliban or anyone else against the United States or its allies. Id. at 52 and n.21. The Judge made no finding that Suleiman was a "part of" Al Qaeda or that he participated in or planned the September 11, 2001 terrorist attacks or any other operation of Al Qaeda or any other terrorist group.

12.     Judge Walton's ruling was affirmed on appeal. *Suleiman v. Obama*, 670 F.3d 1311 (D.C. Cir. 2012), cert. denied, 133 S. Ct. 353 (2012).[1]

13.     Suleiman continues to deny that he was ever a "part of" the Taliban or any of its associated forces. For purposes of this petition, he accepts the courts' prior factual findings. He relies instead on subsequent factual and legal developments, which did not exist when his previous petition for writ of habeas corpus was being litigated, that demonstrate that his continued imprisonment violates the Constitution and laws of the United States, and international laws of war.

**Count I – Violation of the AUMF and the International Law of War**

14.     In repeated official statements, the Commander-in-Chief, President Obama, has unambiguously stated that as of January 1, 2015 the United States is no longer engaged in active hostilities in Afghanistan.

---

[1] On January 22, 2009, President Obama issued Executive Order 13492, calling for an interagency Task Force and a Guantanamo Review Panel, staffed by the Departments of Justice, Defense, State, and Homeland Security, the Federal Bureau of Investigation, the Central Intelligence Agency, and the National Counterterrorism Center, to review the records of all Guantanamo prisoners. Based on a "comprehensive interagency review," "rigorous examination of information," and "unanimous decision-making by senior officials." the Task Force and Review Panel determined, *inter alia*, that Suleiman was among those from Yemen who may be transferred if (1) the security situation improves in Yemen, or (2) an appropriate rehabilitation program becomes available, or (3) an appropriate third-country resettlement option becomes available.  Final Report, Guantánamo Review Task Force at i-ii, 25-26 (Jan. 22, 2010), *available at* www.justice.gov/sites/default/files/ag/legacy/2010/06/02/guantanamo-review-final-report.pdf (last visited June 11, 2015).

15.     Before December 31, 2014, President Obama made official

pronouncements that the United States would end its war and its active hostilities

in Afghanistan on December 31, 2014:

       a.     On February 12, 2013, President Obama declared in his

       State of the Union Address that, "by the end of next year [2014], our

       war in Afghanistan will be over."[2]

       b.     On May 23, 2013, the President stated that "[t]he Afghan

       war is coming to an end."[3]

       c.     On May 24, 2013, the President stated that "by the end of

       next year [2014] our war in Afghanistan will come to an end."[4]

       d.     On May 27, 2013, the President stated, "this time next

       year [2014], we will mark the final Memorial Day of our war in

       Afghanistan."[5]

---

[2] Remarks by the President in the State of the Union Address (Feb. 12, 2013), *available at* https://www.whitehouse.gov/the-press-office/2013/02/12/remarks-president-state-union-address (last visited June 11, 2015).

[3] Remarks by the President at the National Defense University (May 23, 2013), *available at* https://www.whitehouse.gov/the-press-office/2013/05/23/remarks-president-national-defense-university (last visited June 11, 2015).

[4] Remarks by the President at the United States Naval Academy Commencement (May 24, 2013), *available at* https://www.whitehouse.gov/the-press-office/2013/05/24/remarks-president-united-states-naval-academy-commencement (last visited June 11, 2015).

e.    On November 25, 2013, the President stated that "[t]he war in Afghanistan will end next year."[6]

f.    On December 20, 2013, the President stated that, "[b]y the end of next year, the war in Afghanistan will be over."[7]

g.    On January 28, 2014, President Obama stated in the State of the Union Address that "we will complete our mission there [in Afghanistan] by the end of this year, and America's longest war will finally be over."[8]

---

[5] Remarks by the President Commemorating Memorial Day (May 27, 2013), *available at* https://www.whitehouse.gov/the-press-office/2013/05/27/remarks-president-commemorating-memorial-day (last visited June 11, 2015).

[6] Remarks by the President on Immigration Reform – San Francisco, CA (Nov. 25, 2013), *available at* https://www.whitehouse.gov/the-press-office/2013/11/25/remarks-president-immigration-reform-san-francisco-ca (last visited June 11, 2015).

[7] Press Conference by the President (Dec. 20, 2013), *available at* https://www.whitehouse.gov/the-press-office/2013/12/20/press-conference-president (last visited June 11, 2015).

[8] President Barack Obama's State of the Union Address (Jan. 28, 2014), *available at* https://www.whitehouse.gov/the-press-office/2014/01/28/president-barack-obamas-state-union-address (last visited June 11, 2015).

h.     On May 27, 2014, the President stated that "this year, we will bring America's longest war to a responsible end," that "this is the year we will conclude our combat mission in Afghanistan," and that "America's combat mission [in Afghanistan] will be over by the end of this year."[9]

i.     On December 15, 2014, the President stated that "[t]his month, after more than 13 years, our combat mission in Afghanistan will be over. This month, America's war in Afghanistan will come to a responsible end."[10]

j.     On December 28, 2014, United States and NATO officials participated in a ceremony in Kabul formally marking the end of combat operations and the beginning of a support role for the United States and NATO in Afghanistan. The same day, President Obama issued a formal statement declaring an end to the Afghanistan war:

---

[9] Statement by the President on Afghanistan (May 27, 2014), *available at* https://www.whitehouse.gov/the-press-office/2014/05/27/statement-president-afghanistan (last visited June 11, 2015).

[10] Remarks by the President to Military and Civilian Personnel at Joint Base McGuire-Dix-Lakehurst (Dec. 15, 2014), *available at* https://www.whitehouse.gov/the-press-office/2014/12/15/remarks-president-military-and-civilian-personnel-joint-base-mcguire-dix (last visited June 11, 2015).

Today's ceremony in Kabul marks a milestone for our country. For more than 13 years, ever since nearly 3,000 innocent lives were taken from us on 9/11, our nation has been at war in Afghanistan. Now, thanks to the extraordinary sacrifices of our men and women in uniform, our combat mission in Afghanistan is ending, and the longest war in American history is coming to a responsible conclusion.[11]

16.     After December 31, 2014, the President has unequivocally and officially declared that the United States' combat mission in Afghanistan, known as Operation Enduring Freedom, is over, and that our country's involvement in the war in Afghanistan has ended:

a.     On January 20, 2015, the President stated in his State of the Union Address to Congress that "our combat mission in Afghanistan is over."[12]

b.     On January 28, 2015, the President stated that, "[a]fter more than 13 years, our combat mission in Afghanistan is over, and

---

[11] Statement by the President on the End of the Combat Mission in Afghanistan (Dec. 28, 2014), *available at* https://www.whitehouse.gov/the-press-office/2014/12/28/statement-president-end-combat-mission-afghanistan (last visited June 11, 2015).

[12] Remarks by the President in State of the Union Address (Jan. 20, 2015), *available at* https://www.whitehouse.gov/the-press-office/2015/01/20/remarks-president-state-union-address-january-20-2015 (last visited June 11, 2015).

America's longest war has come to a responsible and honorable end."[13]

    c.    On May 25, 2015, the President stated that, "[f]or many of us, this Memorial Day is especially meaningful; it is the first since our war in Afghanistan came to an end.  Today is the first Memorial Day in 14 years that the United States is not engaged in a major ground war."[14]

17.    The Security and Defense Cooperation Agreement Between the Islamic Republic of Afghanistan and the United States of America dated September 30, 2014 ("Bilateral Security Agreement") states, "[u]nless otherwise mutually agreed, United States forces shall not conduct combat operations in Afghanistan."[15]  Under the Bilateral Security Agreement, the role of the United States as of January 1, 2015 is limited to "supporting activities" such as "advising, training, equipping, supporting, and sustaining" the Afghan National Defense and

---

[13] Remarks by the President at Farewell Tribute in Honor of Secretary of Defense Chuck Hagel (Jan. 28, 2015), *available at* https://www.whitehouse.gov/the-press-office/2015/01/28/remarks-president-farewell-tribute-honor-secretary-defense-chuck-hagel (last visited June 11, 2015).

[14] Remarks by the President on Memorial Day (May 25, 2015), *available at* https://www.whitehouse.gov/the-press-office/2015/05/25/remarks-president-memorial-day (last visited June 11, 2015).

[15] Bilateral Security Agreement at 5, *available at* http://www.embassyofafghanistan.org/ document/bilateral-security-agreement-in-english (last visited June 11, 2015). The Bilateral Security Agreement took effect on January 1, 2015. *Id.* at 28.

Security Forces, and "complement[ing] and support[ing]" counter-terrorism operations led by Afghan forces against the remnants of al Qaeda.[16]

18.     The combat mission, Operation Enduring Freedom, came to an end in December 2014, and the non-combat mission, known as Operation Freedom's Sentinel, began in January 2015.[17]

19.     The net result is that while civil war in Afghanistan continues, the United States forces remaining in Afghanistan are not involved except in a training and support role, as distinguished from an armed combat role.

20.     The United States Supreme Court has held that prisoners at Guantanamo may not be held after our country's cessation of active hostilities in Afghanistan:

      a.     In *Hamdi v. Rumsfeld*, 542 U.S. 507 (2007), Justice O'Connor, speaking for a plurality of the Supreme Court, stated (at 520-21, emphasis added):

> "*It is a clearly established principle of the law of war that detention may last no longer than active hostilities*. See Article 118 of the Geneva Convention (III) Relative to the Treatment of Prisoners of War, Aug. 12, 1949, [1955] 6 U. S. T. 3316, 3406, T. I. A. S. No. 3364 ('Prisoners of war shall be released and repatriated

---

[16] *Id.* at 5-6.

[17] DoD News, *Obama, Hagel Mark End of Operation Enduring Freedom* (Dec. 28, 2014), *available at* http://www.defense.gov/News-Article-View/Article/603860/obama-hagel-mark-end-of-operation-enduring-freedom (last visited Aug. 30, 2015).

without delay after the cessation of active hostilities'). See also . . . Praust, *Judicial Power to Determine the Status and Rights of Persons Detained without Trial*, 44 Harv. Int'l L. J. 503, 510-511 (2003) (prisoners of war "can be detained during an armed conflict, but *the detaining country must release and repatriate them 'without delay after the cessation of active hostilities,'* unless they are being lawfully prosecuted or have been lawfully convicted of crimes and are serving sentences" (citing Arts. 118, 85, 99, 119, 129, Geneva Convention (III), 6 T. I. A. S., at 3384, 3392, 3406, 3418)).

". . . Further, we understand Congress' grant of authority for the use of "necessary and appropriate force" to include the authority to detain *for the duration of the relevant conflict*, and our understanding is based on longstanding law-of-war principles. . . . The United States may detain, *for the duration of these hostilities*, individuals legitimately determined to be Taliban combatants who 'engaged in an armed conflict against the United States.' *If the record establishes that United States troops are still involved in active combat in Afghanistan,* those detentions are part of the exercise of "necessary and appropriate force," and therefore are authorized by the AUMF."

b.      In *Boumediene v. Bush*, 553 U.S. 723 (2008), the

Supreme Court reaffirmed the principle that persons captured as

prisoners of war may be detained at Guantánamo under the AUMF

only so long as the United States continues to engage in active

hostilities in "the particular conflict in which they were captured" (at

733, emphasis added):

> "In *Hamdi v. Rumsfeld*, 542 U.S. 507, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004), five Members of the Court recognized that detention of individuals who fought against the United States in Afghanistan *'for the duration of the particular conflict in which they were captured,* is so fundamental and accepted an incident to war as to be an exercise of the 'necessary and appropriate force' Congress has authorized the President to use.' *Id.*, at 518, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (plurality opinion of O'Connor, J.); *id.*, at 588-589, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (Thomas, J., dissenting)."

21.    Suleiman was taken into custody and has been detained at Guantanamo on the basis of his being part of the Taliban. The Taliban is not engaged in war or armed hostilities other than the Afghan civil war.  President Obama has declared the United States is no longer engaged in a combat mission in that conflict, and that "our war in Afghanistan came to an end."  Accordingly, pursuant to the rulings of the United States Supreme Court, and long-standing principles of the international law of war, the United States government no longer has authority to continue to imprison Suleiman, and he should be released without delay pursuant to this Court's writ of habeas corpus.

14

22.     On July 30, 2015, Judge Royce C. Lamberth denied a Motion to Grant

Petition for Writ of Habeas Corpus in *Al Warafi v. Obama*, No. 09-cv-238,

reasoning that (a) the Court should disregard the President's repeated

announcements that the war and the combat mission in Afghanistan have ended

because "[t]he government may not always say what it means or mean what it

says," and (b) the United States is still "involve[d] in the fighting in Afghanistan,"

and war is not required to justify continued detention. *Al Warafi v. Obama*, No.

09-cv-238, Dkt. 95 at 9, 12-14. Petitioner respectfully submits that Judge

Lamberth's opinion is incorrect, for at least three reasons.

23.     First, as the government acknowledges and the Supreme Court held in

*Hamdi* and *Boumediene*, the AUMF, under longstanding law-of-war principles,

authorized detention solely as an incident to war. Now that the U.S. war against the

Taliban is over, the law of war no longer applies and the AUMF no longer

authorizes the detention of persons held as "part of" the Taliban.

15

24.     Second, the Supreme Court has consistently held that the AUMF authorizes the detention of persons only "for the duration of the particular conflict in which they were captured." *Hamdi*, 542 U.S. at 518; *accord, Boumediene*, 553 U.S. at 733. That conflict – "Operation Enduring Freedom" – has ended, and with it the authority to detain Petitioner. The United States' current mission of training and supporting the Afghan national forces – Operation Freedom's Sentinel – is not an armed conflict at all, and in any event, is entirely distinct from the conflict in which Petitioner was captured. The location of the current mission is irrelevant.

25.     Third, Judge Lamberth erroneously assumed that any fighting at all would constitute "hostilities" sufficient to justify continued detention. But the Supreme Court has made clear that these hostilities must occur as part of the "relevant armed conflict." Moreover, under international law, active hostilities must continue at a certain level of intensity in order to justify continued detention. The existence of sporadic fighting, isolated attacks, or threats of violence to U.S. soldiers in Afghanistan are not part of the armed conflict that ended in 2014, and they do not rise to the level of intensity required for "active hostilities."[18] Accordingly, this fighting cannot justify continued detention under international law.

---

[18] In the first six months of Operation Freedom's Sentinel, six NATO personnel were killed in four separate incidents: three NATO contractors, one NATO soldier, one U.S. soldier, and an

**Count II – Imprisonment Under the AUMF of a Non-Combatant For An Unnecessarily and Unreasonably Long Duration**

26.     Suleiman incorporates the previous portions of this Petition.

27.     In Hussain v. Obama, 134 S. Ct. 1621, 1622 (2014), Justice Breyer raised two unresolved questions relating to the meaning and reach of the AUMF that remain unresolved, both of which are presented in Suleiman's case:

> *First,* whether the AUMF authorizes and the Constitution permits imprisonment of persons found to be "part of the Taliban, but . . . not 'engaged in an armed conflict against the United States' in Afghanistan prior to his capture."
>
> *Second*, "whether . . . either the AUMF or the Constitution limits the duration of detention."

28.     As shown from the opinions of Judge Walton and the Court of Appeals, the basis for imprisonment of Suleiman was solely that he was a "part of" the Taliban.  He has not been held in custody these past 13½ years for having "engaged in an armed conflict against the United States."  He did nothing whatever to injure the interests of our county, our personnel, or any of our allies.

---

American civilian. Lead Inspector General for Overseas Contingency Operations, Operation Freedom's Sentinel, *Quarterly Report to the United States Congress, April 1, 2015 to June 30, 2015, available at* https://oig.state.gov/whats-new-9817 (last visited Aug. 30, 2015). Although a single death is unacceptable, these sporadic incidents do not qualify as "active hostilities" under international law.

29.     During the unconscionable length of time Suleiman has been
imprisoned on an island remote from his home, with no personal contacts with his
family, the circumstances in Afghanistan have altered dramatically.  The United
States is no longer engaged in the Afghan civil war.  It cannot be demonstrated or
reasonably contended that further imprisonment of Suleiman is required to protect
the United States or its allies, or that these many years of imprisonment are
insufficient punishment for his youthful indiscretion in volunteering to join the
Taliban in connection with its conflict with the Northern Alliance.  He did not join,
nor had he heard of al Qaeda until after he was imprisoned at Guantanamo.

30.     Under these circumstances, continued incarceration of Suleiman is not
only unconscionable, but also a violation of basic notions of justice, and totally
unnecessary to protect the interests of our country.  The AUMF was not intended
to be used in this manner.

31.     Accordingly, the Court should issue a writ of habeas corpus directing
the government promptly to release Suleiman from custody, and return him to his
home, or relocate him to another suitable country.

**Count III – Equal Protection and Due Process of Law**

32.     Suleiman incorporates the previous portions of this Petition.

33.     This Count is based upon the Due Process and Equal Protection
clauses of the Fifth and Fourteenth Amendments to the United States Constitution.

18

34.     As explained above, Suleiman has been held in custody under difficult

physical and emotional conditions for over 14 years, for reasons that are explained

in the opinions in his case written by Judge Walton and the Court of Appeals.

These opinions tell the story of a young man who made a mistaken choice in 2001,

hurt no one, did nothing to injure the interests of our country or allies, yet has paid

a price far heavier than many who commit serious crimes in our country.

35.     In considering the question whether Suleiman has suffered a breach of

his rights under the Equal Protection and Due Process clauses, we call the Court's

attention to the experiences of several of his former inmates at the Guantanamo

Bay Prison on the island of Cuba.

• The five Taliban prisoners, including two senior militant commanders,

released in May 2014 from Guantanamo Bay and sent to Qatar, without the

statutorily required advance notification to Congress,[19] in exchange for the release

of  Sgt. Bowe Bergdahl, who had  been held by the Taliban for approximately five

years.  Senator John McCain called the five Taliban prisoners "vicious and violent

Taliban extremists" and "hardened terrorists who have the blood of Americans and

---

[19] The National Defense Authorization Act for Fiscal Year 2014, Pub. L. 113-66, 127 Stat. 672
(Dec. 26, 2013), prohibits the transfer or release of any Guantánamo detainee unless the
Secretary of Defense determines that the detainee "is no longer a threat to the national security"
or that actions taken or planned "will substantially mitigate the risk of such individual engaging
or reengaging in any terrorist or other hostile activity." *Id.* § 1035(a) and (b). The Act also
requires the Secretary of Defense to "notify the appropriate committees of Congress" at least 30
days before transferring or releasing such a detainee. *Id.* § 1035(d).

countless Afghans on their hands."[20]   The government's unclassified summaries of evidence describe these five Taliban members as follows:

(1)  *Mullah Mohammad Fazl*, a senior Taliban commander and former Taliban Army Chief of Staff who commanded more than 3,000 Taliban troops and was accused of responsibility for widespread atrocities against civilians. Fazl was also suspected of devising and directing a plan to send a 15-member team to try and assassinate an anti-Taliban commander.[21]

(2)  *Khirullah Said Wali Khairkhwa*, a former Taliban Interior Minister and provincial governor, alleged to have close and direct ties to Osama bin Laden; to have met personally with Osama bin Laden and Ayman al Zawahiri; to have represented the Taliban in November 2001 talks aimed at procuring Russian SAM-7 missiles to use against United States warplanes and securing an open border with Iran so that Arabs and Taliban members could smuggle money and goods out of

---

[20] Dan Lamothe, *Guantánamo Bay transfers under scrutiny after deal with Taliban over Bergdahl release*, WASH. POST (June 2, 2014), available at http://www.washingtonpost.com/world/national-security/guantanamo-transfers-under-scrutiny-after-deal-with-taliban-over-bergdahl-release/2014/06/02/dea64ffa-ea60-11e3-b98c-72cef4a00499_story.html (last visited June 11, 2015); Adam Entous and Julian E. Barnes, *U.S. Soldier Bowe Bergdahl Released by Taliban in Swap for Guantánamo Detainees*, WALL ST. J. (May 31, 2014), available at http://www.wsj.com/articles/in-prisoner-swap-taliban-releases-u-s-soldier-held-for-five-years-1401555125 (last visited June 11, 2015).

[21] Unclassified Summary of Evidence for Administrative Review Board in the Case of Fazl, Mohammad A (Oct. 31, 2007), *available at* http://projects.nytimes.com/guantanamo/detainees/7-mullah-mohammad-fazl/documents/5 (last visited June 11, 2015).

Afghanistan; and to have used his position to become a major opium drug lord in western Afghanistan.[22]

(3) *Mohammad Nabi Omari*, a former Taliban communications chief and operative and sub-commander of the Union of Mujahedin, a group supported, guided, and funded by al Qaeda, alleged to have participated in a joint Taliban-al Qaeda cell in Khowst, Afghanistan that planned attacks against United States and coalition forces, and to have attended meetings with al Qaeda, senior Taliban officials, and the terrorist organization Hezb-e-Islami Gulbuddin.[23]

(4) *Mullah Norullah Noori*, a former provincial governor and Taliban military general who fought with Taliban troops on the front lines at Mazar-e-Sharif and Kunduz, Afghanistan, accused of hosting al Qaeda commanders and of assisting a friend in using profits from the sale of narcotics to support the Taliban and al Qaeda.[24]

---

[22] Unclassified Summary of Evidence for Administrative Review Board in the Case of Khair Ulla Said Wali Khairkhwa (June 26, 2007), *available at* http://projects.nytimes.com/ guantanamo/detainees/579-khirullah-said-wali-khairkhwa/documents/5 (last visited June 11, 2015).

[23] Unclassified Summary of Evidence for Administrative Review Board in the Case of Mohammad Nabi (June 22, 2007), *available at* http://projects.nytimes.com/guantanamo/ detainees/832-mohammad-nabi-omari/documents/5 (last visited June 11, 2015).

[24] Unclassified Summary of Evidence for Administrative Review Board in the Case of Noori, Mullah Norullah (Jan. 27, 2007), *available at* http://projects.nytimes.com/guantanamo/detainees/ 6-mullah-norullah-noori/documents/5 (last visited June 11, 2015).

(5) *Abdul Haq Wasiq*, the Taliban's former Deputy Minister of Intelligence alleged to have arranged for al Qaeda to train Taliban members in intelligence methods and to have helped al Qaeda fighters evade capture after the September 11, 2001 attacks in the United States.[25]

• Four other Guantanamo prisoners were convicted and sentenced by United States military commissions, and are now no longer incarcerated:

(1) *David Hicks* pled guilty in 2007 to providing material support to al Qaeda, and fighting against coalition forces.  In March 2007 he was sentenced to nine months imprisonment, sent to his home country, Australia, and released in May 2007.[26]

(2) *Omar Khadr* pled guilty before a military commission in 2010 to murder, attempted murder and other crimes.  He admitted to throwing a grenade that killed United States Army Sergeant 1st Class Christopher Speer after a firefight in Mazar-e-Sharif, Afghanistan.  He was sentenced to 8 years under the

---

[25] Unclassified Summary of Evidence for Administrative Review Board in the Case of Wasiq, Abdul Haq (Aug. 14, 2007), *available at* http://projects.nytimes.com/guantanamo/detainees/4-abdul-haq-wasiq/documents/5 (last visited June 11, 2015).

[26] Press Release, *Australian Detainee Sentenced to Nine Months* (Mar. 30, 2007), *available at* http://www.defense.gov/news/newsarticle.aspx?id=32657 (last visited June 11, 2015). The conviction and sentence were vacated in 2015 on the ground that his rights under the *ex post facto* clause of the United States Constitution were violated because the conduct for which he was charged occurred before material support for terrorism became a crime triable before the military commission. Chief Prosecutor Mark Martins Remarks at Guantánamo Bay (Feb. 22, 2015), *available at* http://justsecurity.org/tag/david-hicks (last visited June 11, 2015).

plea deal, 7 of them to be served in his native Canada.[27]   Khadr is currently free on

bail while he challenges his guilty plea and conviction in Canadian courts.[28]

(3) *Salim Ahmed Hamdan* was a driver for al Qaeda and Osama bin Laden

in Afghanistan from 1996 to his capture in November 2001.   In 2008 he was tried

and convicted before a United States Military Commission for providing material

support for terrorism, and sentenced to 5½ years.   With credit for time served, he

was released from the Guantanamo Bay prison in 2008.[29]

(4) *Noor Uthman Mohammed* pled guilty in 2011 before a United States

military commission to providing material support for terrorism and conspiracy.

Pursuant to his plea agreement, he was sentenced to 2 years and 10 months'

imprisonment.   He was released to his home country of Sudan in 2013.[30]

36.    In light of the circumstances described above, compared to the factual

basis for which Suleiman has been held for the past 13-plus years, described in the

---

[27] Press Release, *DOD Announces Sentence for Detainee Omar Khadr* (Oct. 31, 2010), *available at* http://www.defense.gov/releases/release.aspx?releaseid=14023 (last visited June 11, 2015).

[28] Ian Austen, *Omar Khadr, Former Guantánamo Detainee, Is Released on Bail in Canada*, NY TIMES (June 11, 2015), *available at* http://www.nytimes.com/2015/05/08/world/americas/omar-khadr-canada-guantanamo-detainee-released-on-bail.html?_r=0 (last visited June 11, 2015).

[29] In 2012, the Court of Appeals vacated Hamdan's conviction. *Hamdan v. United States*, 696 F.3d 1238 (D.C. Cir. 2102).

[30] The military convening authority vacated the conviction in 2015, in light of Court of Appeals rulings in other cases under the *ex post facto* clause. Press Release, *Findings and Sentence Disapproved in US v. Noor Uthman Muhammed* (Jan. 9, 2015), *available at* http://www.defense.gov/Releases/Release.aspx?ReleaseID=17107 (last visited June 11, 2015).

opinions of Judge Walton and the Court of Appeals, his rights to equal protection of the law, and to due process of law, have been violated and will continue to be violated every subsequent day he is incarcerated in the Guantanamo Bay prison. Suleiman has not been charged with or tried for a crime, and the United States does not intend to do so, for the simple and obvious reason that he has not committed a crime. Nevertheless, unless this court issues a writ of habeas corpus, Suleiman will continue to be held without trial, without due process of law, and compared to the cases cited above in violation of his right to due process and equal protection of the law.

### Prayer for Relief

Accordingly, Petitioner moves this Court to issue a writ of habeas corpus directing Respondents to release Suleiman from custody in the Guantanamo Bay prison, and to return him to his home in Taiz, Yemen, or to another suitable country, and for other relief the Court may deem appropriate and just.

Respectfully submitted,

David W. DeBruin
JENNER & BLOCK LLP
1099 New York Avenue, N.W.
Suite 900
Washington, DC  20001
(202) 639-6015 (ph)
(202) 639-6066 (fax)
ddebruin@jenner.com

24

Thomas P. Sullivan
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL  60654
(312) 923-2928 (ph)
(312) 840-7328 (fax)
tsullivan@jenner.com

Patricia A. Bronte
Bronte Law LLC
915 W. Gunnison St., Suite 3
Chicago Illinois 60640
(312) 388-7890 (ph)
(312) 254-3242 (fax)
bronte@brontelaw.com

*Attorneys for Petitioner AbdulRahman
Abdou Abou Al Ghaith Suleiman*

Date: September 21, 2015